# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 19-cv-01745-REB

ERNESTINE PASILLAS,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

# ORDER REVERSING DISABILITY DECISION AND REMANDING TO AGENCY

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed June 17, 2019, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges she is disabled as a result of an affective disorder, carpal tunnel syndrome, disorders of the cervical spine and left shoulder joint, and obesity. After her applications for disability insurance benefits and supplemental security income benefits

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on February 11, 2013. On appeal of the ALJ's unfavorable decision, the Commissioner moved to remand the case for further proceedings under sentence four of 42 U.S.C. § 405(g). Following remand, a second hearing was held on March 5, 2018. At the time of this hearing, plaintiff was 48 years old. She has a high school education and past relevant work experience as nurse assistant. She has not engaged in substantial gainful activity since September 9, 2007, her alleged date of onset.[2] The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other impairments were found to be non-severe. The ALJ found plaintiff had the residual functional capacity to perform a simple, light work with postural and non-exertional limitations. Although this finding precluded plaintiff's past relevant work, the judge determined there were other jobs existing in sufficient numbers in the national and local economies she could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

---

[2] Nevertheless, as the ALJ noted in connection with his initial benefits decision, plaintiff previously filed a claim for benefits which was denied on November 1, 2012. The ALJ found no good cause to reopen that decision, making the prior determination administratively final. (Tr. 13-14.) 20 C.F.R. §§ 404.987 - 404.989. Following remand, however, the ALJ considered the entire claimed period of disability from the alleged date of onset. (*See* Tr. 792.) Neither party addresses whether that decision constitutes a *de facto* reopening of the prior application. ***See Taylor for Peck v. Heckler***, 738 F.2d 1112, 1115 (10th Cir. 1984). As the case is being remanded, the question may be evaluated at the administrative level.

2

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).[3] **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires

---

[3] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

4

more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

I previously have rejected plaintiff's suggestion that the ALJ has any burden at step five to explain why he finds a number of alternative jobs significant when, as here, they plainly are. As I have told her counsel before, "[p]laintiff has identified no authority which requires the ALJ to give the detailed, factor-by-factor explanation she suggests is necessary, except in the circumstances not relevant here." *Garcia v. Saul*, 2019 WL 3802105 at *4 n.6 (D. Colo. Aug. 13, 2019). Indeed, as I have found previously, the law is plainly to the contrary.[4] *See id.* (quoting *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009) ("'*Trimiar* [*v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)] does not hold that . . . a court must engage in a factoral analysis when the number of jobs . . .

---

[4] As the attorney who advanced this argument previously, plaintiff's counsel should have disclosed this adverse authority. **Colo. R. Prof. Conduct** 3.3(a)(2) ("A lawyer shall not knowingly: . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.") (available at: https://www.cobar.org/For-Members/Opinions-Rules-Statutes/Rules-of-Professional-Conduct/Rule-33-Candor-Toward-the-Tribunal) (last accessed December 11, 2019). *See also* **D.C.COLO.LAttyR** 2(a) (adopting Colorado Rules of Professional Conduct as standards of professional responsibility in United States District Court for the District of Colorado).

5

available is . . . much larger' than the 650 to 900 jobs identified in *Trimiar*.")). I thus find no error in that discrete regard.

The same cannot be said of the ALJ's assessment of the medical opinions of record, however. Because I find the reasons given by the ALJ in support of his determination as to the weight assigned to these opinion do not provide substantial evidence in support of his determinations, I reverse.

Of primary concern to this court is the ALJ's assessment of the opinion of the state agency medical examiner, Dr. Kimberlee Terry. Dr. Terry reviewed plaintiff's initial application and concluded, relevantly, that plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry up to 10 pounds, except that she could not push, pull, or lift more than ten pounds with her left arm due to her shoulder impairment. (Tr. 55-56.) The ALJ gave Dr. Terry's opinion "some weight" but only "to the extent it provides that [plaintiff] can perform a full range of light work." (Tr. 802.)

This statement is perplexing, since Dr. Terry's opinion plainly does not support a finding that plaintiff could perform a full range of light work, and the ALJ ultimately also concluded she did not have the residual functional capacity for a full range of light work.[5] Indeed, his assessment was even more restrictive than suggested by Dr. Terry insofar as it provided for no overhead work (whereas Dr. Terry endorsed limited overhead reaching on the left side only), no more than occasional handling and fingering bilaterally (Dr. Terry suggested plaintiff could frequently perform these

---

[5] By contrast, the opinion of Louisa Sisnroy, a treating source, is consistent with an ability to perform a full range of both light and sedentary work. (Tr. 533-535.) The ALJ, however, found this opinion insufficiently accounted for plaintiff's shoulder injury. (Tr. 801.)

6

functions), and no more than occasional use of foot or leg controls (a limitation not endorsed by any medical source). The ALJ appears, however, to have rejected Dr. Terry's opinion to the extent it found plaintiff could not lift more than ten pounds with her left arm,[6] concluding that

> [w]hile [plaintiff] has been observed to have mild pain with motion in her left shoulder, this does not support a limitation beneath the light exertional level. Additionally, a positive Hawkins test does not support a limitation to the sedentary exertional level. In January 2018, she was observed to have normal tone and power in all four limbs.

(Tr. 802 (internal citations omitted).)[7]

None of these reasons, singly or in combination, provide adequate substantiation for the ALJ's decision.[8] The evidence related to plaintiff's long-standing shoulder impairment has included two shoulder surgeries, a barrage of physical and other therapies, the use of multiple narcotic medications, and continuing management for chronic neck and shoulder pain. Nothing in the record as recounted by the ALJ

---

[6] Dr. Terry's ten-pound restriction also applied to plaintiff's ability to push and pull with her left arm. Because the ALJ restricted plaintiff to unskilled work, however, this limitation is not necessarily relevant. Although light work may require "some pushing and pulling of arm or leg controls" "when it involves sitting most of the time," 20 C.F.R. § 404.1567, "[r]elatively few unskilled light jobs are performed in a seated position," **Social Security Ruling 83-10**, 1983 WL 31251 at *5 (SSA Jan. 1, 1983).

[7] Dr. Terry also suggested that plaintiff could never climb ladders, ropes, or scaffolds. (Tr. 56.) The ALJ did not adopt this limitation either, but such inabilities do not significantly effect the occupational base for light work. *See* **Social Security Ruling 83-14**, 1983 WL 31254 at *4 (SSA 1983).

[8] The Commissioner insists that any failure of the ALJ to articulate valid reasons for his rejection of Dr. Terry's ten-pound lifting restriction is ultimately harmless because light work is still indicated if the claimant can lift 20 pounds with both arms. I cannot agree. Social Security Ruling 96-9p, to which the Commissioner cites, is inapposite, as it addresses the "minimal lifting and carrying requirements" of sedentary work. 1996 WL 374185 at *7 (SSA July 2, 1996). This court's opinion in ***Mestas v. Astrue***, 2010 WL 3604395 (D. Colo. Sept. 7, 2010), provides no support for the Commissioner's position either. There, the evidence included a specific indication that the claimant could use her impacted upper extremity as a "helper hand" to assist the unaffected arm. *Id.*, 2010 WL 3604395 at 3 n.3. Dr. Terry's opinion contains no such clarification.

7

supports a conclusion that plaintiff has only "mild" pain in her affected shoulder.  Even the small, isolated pieces of evidence the ALJ cited do not warrant such a finding.  For instance, the ALJ noted plaintiff was found to have no instability in her shoulder in March 2012 (*see* Tr. 288.), without explaining why a stable joint necessarily would not be painful or otherwise limiting (Tr. 801).  His citation of what plaintiff was able to do with her unaffected right arm plainly is not probative of the relevant issues either.  (**See** Tr. 801.)  Likewise, the ALJ's specific reference to an isolated finding of "normal tone and power in all four limbs" is not substantial evidence showing that Dr. Terry's proposed restrictions are unfounded.  (Tr. 801.)[9]

Finally, the ALJ's suggestion that a positive Hawkins test does not support a limitation to sedentary work is at best a non sequitur.[10]  While a positive Hawkins test "is most likely indicative of damage to the tendon of the supraspinatus muscle," Wikipedia, **Hawkins-Kennedy test** (available at:  https://en.wikipedia.org/wiki/Hawkins%E2%80%93Kennedy_test) (last accessed December 13, 2019), it says nothing about the degree of injury, let alone the amount of functional limitation that injury might be expected to cause.  So to say that such a test does not support a greater degree of limitation is merely another way of recognizing that plaintiff suffers from a shoulder impairment.  It is

---

[9]  Nor is it even supported by the evidence to which it cites.  During that January 2018 examination – performed by plaintiff's diabetes doctor in connection with his treatment of that condition – it was noted merely that plaintiff's "[m]ajor extremity joints move okay, non-tender to move, no synovial swelling."  (Tr. 1673.)

[10]  At worst, it approaches an unauthorized exercise of medical judgment by the ALJ.  **See Maddox v. Colvin**, 174 F.Supp.3d 1252, 1257 n.4 (D. Colo. 2016) (quoting **McGoffin v. Barnhart**, 288 F.3d 1248, 1252 (10th Cir. 2002) (an "ALJ may reject medical opinion 'only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion'") (citation and internal quotations marks omitted)).

not positive evidence supporting any particular functional restrictions.  Because the ALJ therefore failed to provide sufficient, valid reasons for the limitations he did impose, his opinion is not supported by substantial evidence and must be reversed.

The ALJ's discussion and analysis of the opinion of the psychological consultative examiner, Dr. William Morton, also should be better substantiated on remand.  Dr. Morton suggested, *inter alia*, that plaintiff had "moderate limitations interacting with supervisors, coworkers, and the public."  (Tr. 494.)  The ALJ purported to give "great weight" to Dr. Morton's assessment of plaintiff's functioning (Tr. 801), yet only endorsed limits on plaintiff's interactions with the general public, imposing no limitations on her ability to interact with supervisors or coworkers (Tr. 798).  Likewise, although Dr. Morton suggested plaintiff had moderate limitations in her abilities to use good judgment and respond appropriately to changes in the workplace (Tr. 494), the ALJ included no such limits in his residual functional capacity assessment (Tr. 797-798).

The Commissioner points out that at steps two and three of the sequential evaluation, the ALJ noted plaintiff's somewhat contradictory reports that she avoids spending time with family or coworkers she does not like, but could get along with "others" "depending on how she felt," and that she spends time with "others" daily.  Plaintiff also reported she could get along with authority figures (Tr. 797), although she apparently lost a job because she could not get along with her boss (Tr. 798).  The ALJ also found "no evidence to suggest [plaintiff] could not deal with normal work changes and stress," noting a reference in the record to an April 2014 note suggesting she had "normal" insight and judgment.  (Tr. 797, 716.)

Of course, having once discussed this evidence, the ALJ was not required to do

so again with respect to each medical opinion he considered. **See Best-Willie v. Colvin**, 514 Fed. Appx. 728, 733 (10th Cir. March 26, 2013); **Endriss v. Astrue**, 506 Fed. Appx. 772, 777 (10th Cir. Dec. 26, 2012); **Martinez v. Colvin**, 2016 WL 1247765 at *4 (D. Colo. Mar. 30, 2016); **McKee v. Colvin**, 2016 WL 1222972 at *3 (D. Colo. March 29, 2016). Nevertheless, the ALJ's discussion of the evidence of record must sufficiently set forth his rationale to permit meaningful review of his decision. **See Wall v. Astrue**, 561 F.3d 1048, 1068 (10th Cir. 2009); **Perotin v. Colvin**, 110 F.Supp.3d 1048, 1054 (D. Colo. 2015). Part of that duty requires him to explain why particular limitations endorsed by a medical source were not adopted. **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996); **Frantz v. Astrue**, 509 F.3d 1299, 1302 (10th Cir. 2007).

That duty was not fulfilled here. Although the ALJ said he gave Dr. Morton's opinions great weight, he clearly did not give *all* of the opinion such deference. While he certainly was not required to adopt every limitation suggested by Dr. Morton, **see Rex v. Colvin**, 26 F.Supp.3d 1058, 1063 (D. Colo. 2014), he failed to explain why he declined to adopt certain of Dr. Morton's endorsed limitations.

Nor can I find this error harmless. The ALJ's discussion at steps two and three is not entirely supportive of a determination that plaintiff has no difficulty getting along with coworkers or supervisors.[11] Moreover, despite plaintiff's somewhat contradictory reports regarding her abilities to interact with supervisors and coworkers, the ALJ still found she had moderate limitations in this area. However, because he did not specify

---

[11] The "others" with whom plaintiff reported spending time daily were her parents. (Tr. 797, 217.)

which of the three relevant groups with whom plaintiff might come in contact in the workplace (supervisors, coworkers, and the public), it is not possible to determine why further limits were not adopted.[12]

Likewise, the ALJ's conclusion that there was "no evidence" that plaintiff could not deal with normal changes in a work setting ignores that Dr. Morton's opinion itself is some evidence in support of such a conclusion. **See** 20 C.F.R. § 404.1513(a)(2). That evidence is not sufficiently undercut by the ALJ's citation to a single instance, during a *physical* examination, when plaintiff was cursorily noted to have normal judgment and insight. (**See** Tr. 716.) Here again, he must more fulsomely substantiate his determination.

For these reasons, reversal is required. Although plaintiff requests a directed award of benefits, I find this case does not represent an appropriate circumstance for the exercise of my discretion in that regard. **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993).[13]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

2. That this case is remanded to the ALJ, who is directed to

    a.    Determine whether the prior disability decision was reopened *de*

---

[12] The difficulty is compounded in this instance by the ALJ's affording relatively less weight to the opinion of the state agency doctor, Dr. Lisa Renner, who suggested plaintiff would have only mild limitations in all areas of work-related mental functioning. (Tr. 801, 52-54.) It thus is clear the ALJ meant to impose moderate limitations on plaintiff's mental residual functional capacity, but not why he chose to include only some of those that appear to be supported by the evidence on which he purportedly relied.

[13] By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

11

*facto* given the ALJ's previous determination covering plaintiff's entire period of alleged disability;

  b. Reevaluate the medical source opinions of record, explaining with particularity his reasons for the weight given those opinions;

  c. Solicit further medical or vocational expert testimony, recontact any treating or other medical source, or otherwise further develop the record as he deems necessary;

  d. Reexamine his residual functional capacity assessment;

  e. Reassess his determination at the remaining steps of the sequential evaluation; and

  f. Reassess the disability determination; and

3. That plaintiff is awarded her costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

Dated December 13, 2019, at Denver, Colorado.

              **BY THE COURT:**

              */s/ Bob Blackburn*
              Robert E. Blackburn
              United States District Judge